## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 14-42 |
|---|---|
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| DONZELL SAMUELS | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), filed by the Defendant, Donzell Samuels ("Samuels"). Record Document 68. Samuels also submitted numerous supplements to his original motion. Record Documents 77, 79, 82, 84, 86, 91, and 92. The Government opposes Samuels's motion for release. Record Documents 74 and 89. For the following reasons, Samuels's motion is granted.

### I.    Background

In 2014, Samuels was convicted of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g). The statutory range he faced for imprisonment was zero to ten years. At sentencing, with an offense level of 25 and a criminal history category of IV, Judge Donald Walter sentenced Samuels to 105 months' imprisonment and three years of supervised release. Record Document 56. Samuels is currently housed in the custody of the Bureau of Prisons ("BOP") at FCI Texarkana. His projected release date is September 2, 2021. Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited December 3, 2020).

1

Due to the coronavirus and his own medical conditions (kidney disease, hypertension, obesity, and gastroesophageal reflux disease ("GERD")),[1] Samuels requests a reduction of his term of imprisonment to a sentence of time-served.  The World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a global pandemic related to the spread of the COVID-19 virus, a strand of the novel coronavirus. The CDC has advised that persons over the age of sixty-five and those with certain underlying medical conditions are considered high risk and are particularly susceptible to contracting the virus.  In light of this pandemic, the President of the United States declared a national emergency.  The CDC and all health authorities have strenuously recommended social distancing as a means of limiting community spread of the virus.

The prison population is particularly at risk due to the conditions of confinement, the close contact of inmates, and the inability to maintain social distancing.  Responding to this concern, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") "expand[s] the cohort of inmates who can be considered for home release."  Pursuant to that provision of the CARES Act, United States Attorney General William Barr issued memoranda to the BOP regarding criteria to be considered, including inmates presenting high risk factors for the disease, to maximize the transfer to home confinement for all eligible inmates.

---

[1] According to the presentence report ("PSR"), Samuels had no diagnosed medical conditions at the time of sentencing.  Record Document 54, p. 10.

In this case, Samuels is forty-one years old and suffers from chronic kidney disease, hypertension, obesity, and GERD.  Record Document 74-2, p. 3.  He initially requested release to home confinement from the warden of FCI Texarkana, but his request was denied for reasons that the Court cannot discern.  The warden's response to Samuels's request states:  "A review of this matter concluded you do not meet the criteria with Medical Conditions.   According to Program Statement 5050.49, Compassionate Release/Reduction or The Cares Act.  Particularly, at this time you have been diagnosed with a terminal illness, Chronic Kidney Disease Stage 3 (Chronic Kidney Failure)."  Record Document 76-1, p. 3.  Samuels appealed that decision, but the warden's decision was affirmed.  Id. at p. 7. He again appealed through the proper prison channels, but the decision was once more affirmed.  Again, the reason for the denial of Samuels's request is not easily ascertainable:

> You are requesting Compassionate Release based on your medical issues. A review of your medical record reveals that you are a Care Level Two, and at this time you have been diagnosed with a terminal illness, Chronic Kidney disease Stage Three, Hypertension, Orthopedic/Rheumatology, Gastroesophageal reflux disease without esophagitis, Endocrine/Lipid and an enlarged prostate with lower urinary tract symptoms (BPH).  This is for informational purposes only.  In the event you are dissatisfied with this response, you may appeal to the Bureau of Prisons . . . Administrative Remedy Section . . . .

Record Document 82-1, p. 5. Samuels appealed to the BOP's Regional Director and then again to the BOP's Central Office, but the warden's decision was affirmed at both stages.

Samuels submits that his medical conditions place him at high risk for contracting or becoming severely ill from COVID-19 and thus constitute extraordinary and compelling

reasons to warrant his release from BOP.  He asks that his sentence be modified to a sentence of time-served.  In response, the United States concedes that Samuels has exhausted his administrative remedies within the prison, such that this Court can consider the instant request.  Its supplemental opposition further acknowledges that Samuels's chronic kidney disease constitutes an extraordinary and compelling reason to warrant his release, but it argues that Samuels's medical needs are adequately managed by FCI Texarkana and that he otherwise poses a danger to the community and, as such, should not be released.

## II.    Law and Analysis.

### A.    Exhaustion of Remedies

Here, Samuels seeks compassionate release per 18 U.S.C. § 3582(c)(1)(A)(i).[2] This allows for the modification of a term of imprisonment upon a finding that certain

---

[2] It is important to distinguish between the CARES Act, on the one hand, and § 3582 as amended by the First Step Act on the other.  The CARES Act was the federal government's comprehensive response to the COVID-19 crisis and certain provisions addressed the release of eligible inmates in the prison population.  The CARES Act expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement.

Section 3624(c)(2) authorizes the BOP to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."  18 U.S.C. § 3624(c)(2). The CARES Act, in turn, provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement.  Thus, home confinement determinations rest with the BOP.

In this case, Samuels seeks judicial relief under 18 U.S.C. § 3582, which permits the district court to reduce a prisoner's term of imprisonment under certain circumstances.

extraordinary and compelling reasons warrant a reduction in an inmate's sentence. As amended by the First Step Act in December of 2018, the compassionate release provision provides:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>>>>
>>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

---

Thus, the statute applicable to the Court's analysis here is § 3582, not the CARES Act and its expansion of § 3624(c)(2).

Although sentence reductions under § 3582 historically could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to allow prisoners to petition the district courts as set forth above.  However, as the statute makes plain, prior to filing a motion for release in the district court, a prisoner must first exhaust his administrative remedies either by fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release on his behalf, or by filing the motion with the court after a lapse of 30 days from the date of the warden's receipt of his request for release, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A).  The Fifth Circuit has made it clear that this is a mandatory claim-processing rule that must be enforced if the United States raises it in the district court.  United States v. Franco, 973 F.3d 465, 468 (5th Cir. 2020).

Here, the exhaustion requirement has been satisfied.  Samuels has fully pursued all administrative appeals available to him up to the ultimate denial by the BOP's Central Office via the response issued by the Administrator of National Inmate Appeals.  Record Document 86-1, p. 2.  As such, the Court has the authority to address the merits of Samuels's request to modify his sentence under § 3582 and will turn to that inquiry now.

B.    Extraordinary and Compelling Reasons

Subject to consideration of the § 3553(a) factors, section 3582(c)(1)(A) permits a reduction in Samuels's term of imprisonment if the Court determines that extraordinary and compelling reasons warrant a reduction.  The reduction, however, must be "consistent with applicable policy statements issued by the Sentencing Commission."  18

6

U.S.C. § 3582(c)(1)(A).  28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a danger to the safety of any other person or the community.[3]  Under § 1B1.13 Application Note 1, the following are deemed extraordinary and compelling reasons: (1) defendant's

---

[3] "[T]he Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. . . . [D]istrict courts have found that they have discretion to determine what constitutes 'extraordinary and compelling reasons' on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive." United States v. Mazur, 457 F. Supp. 3d 559, 561 (E.D. La. May 4, 2020).

medical condition;[4] (2) defendant's age;[5] (3) family circumstances;[6] or (4) other reasons. U.S.S.G. § 1B1.13, cmt. n.1.   "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons."   U.S.S.G. § 1B1.13, cmt. n.1(D).

Here, Samuels submits that he is entitled to compassionate release due to his chronic kidney disease, hypertension, GERD, and obesity.   The record confirms Samuels has been diagnosed with all four of these conditions.   The current CDC guidelines report that chronic kidney disease and obesity are both conditions which increase one's risk of severe illness from COVID-19. See Ctr. for Disease Control and Prevention, *People With Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2F www.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 7, 2020).   Hypertension, on the other hand, is a

---

[4] The defendant must be suffering from a terminal illness, or (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or (3) deteriorating physical or mental health because of the aging process, which substantially diminishes the defendant's ability to provide self-care in the prison environment and from which the defendant is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A).

[5] Defendant is at least sixty-five years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten years or seventy-five percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13, cmt. n.1(B).

[6] Family circumstances requires the death or incapacitation of the caregiver of the defendant's minor child or children or the incapacitation of the defendant's spouse or registered partner where the defendant is the only available caregiver for him or her. U.S.S.G. § 1B1.13, cmt. n.1(C).

condition which "might" increase the risk of severe illness.  See id.  GERD is not identified as a specific risk factor.  The Government acknowledges that Samuels's chronic kidney disease is a condition identified by the CDC as increasing his risk for serious illness or death during the COVID-19 pandemic.  Record Document 89, p. 9.  As such, the Government concedes that Samuels has established extraordinary and compelling reasons to warrant his release, subject to consideration of the factors set forth in Sections 3142(g) and 3553(a).

The Court agrees that Samuels has established extraordinary and compelling reasons warranting release.  Samuels has severe medical conditions, and his health has continued to decline over the past few months.  He has been upgraded from Stage 3 kidney disease to Stage 4.[7]  Commensurate with that change, the BOP amended Samuels's medical status from Care Level 2 to Care Level 3.  The BOP defines Care Level 3 as:

> outpatients who have complex, and usually chronic, medical or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications.  They may require assistance with some activities of daily living (ADLs) that can be accomplished by inmate companions. Stabilization of medical or mental health conditions may require periodic hospitalization.

Care Level Classification for Medical and Mental Health Conditions or Disabilities, Federal Bureau of Prisons Clinical Guidance, May 2019, https://www.bop.gov/resources/

---

[7] It is the Court's understanding there are only five stages of kidney disease, with Stage 5 being kidney failure necessitating dialysis or a kidney transplant.  See National Kidney Foundation, Key Points: Living with Stage 4 Kidney Disease, https://www.kidney.org/patients/peers/stage4 (last visited Dec. 9, 2020).

health_care_mngmt.jsp (last visited Dec. 8 2020).[8]   The Court finds that Samuels's medical conditions, primarily his Stage 4 kidney disease from which he is not expected to recover, substantially diminish his ability to provide self-care in the prison environment. U.S.S.G. § 1B1.13, cmt. n.1(A).

Aside from Samuels's own medical condition, an additional factor the Court must consider is the condition of the facility in which he is housed.  The BOP's website reflects 337 inmate cases and 24 staff cases at FCI Texarkana, which is an increase of 65 inmate cases since the Court last researched these statistics a mere four days ago. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited Dec. 9, 2020).   To say the virus is running rampant within this facility may be an understatement.   However, the Court understands each BOP facility is battling the pandemic the best it can with the resources it has available.  The Court also recognizes that the BOP has made "extensive and professional efforts to curtail the virus's spread," see United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020), and that its operational procedures have been modified to combat any further spread.  Nonetheless, the spread of the virus is understandably concerning for all of the inmate population, especially for those high-risk individuals like Samuels.

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant.  The Court stresses that the spread of the coronavirus and the conditions

---

[8] There are only four care levels within the BOP, Level 4 being the highest.

of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances.  However, Samuels has presented the Court with convincing reasons wholly specific to him, his medical condition, and the conditions of confinement he is experiencing.  Samuels has at least two of the CDC risk factors that place him at a higher risk of serious illness from COVID-19:  he has Stage 4 kidney disease and he is obese.  See Ctr. for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Dec. 4, 2020).   His kidney disease has deteriorated over the past several months.  More importantly, the decline in his condition has prompted the BOP to assign Samuels to a BOP medical facility in order to better manage and treat his kidney disease.  Indeed, in the September 16, 2020 letter to Samuels, in which his request for home confinement was again denied, the Administrator of National Inmate Appeals stated, "While any medical issues you may have will not be addressed in this response, it is noted you have recently been approved for a medical transfer to occur in the near future."  Record Document 86-1, p. 2.  Unfortunately, it is now December, and Samuels remains at FCI Texarkana.

Given the worsening conditions at FCI Texarkana, Samuels's health conditions, his need for increasing medical care, and the impossibility of social distancing in a prison setting, Samuels's continued incarceration poses a real threat to his health and safety.  As such, the Court agrees with the Government that Samuels has presented extraordinary and compelling reasons to warrant his release.

11

C.      Consideration of Statutory Factors

The Court must now determine whether Samuels presents a danger to the "safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). This is where the Government objects to his release.   Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

Regarding the nature and circumstances of the charged offense, as set forth above, Samuels was a convicted felon in possession of numerous firearms and ammunition.  At the time he committed this offense in 2013, he was on state probation for misdemeanor theft.  When the weapons were located by state probation officers during a search of his residence, they also discovered marijuana and cocaine.  With respect to the misdemeanor theft conviction, in 2012, Samuels burglarized his drug dealer's residence in search of drugs to replace the poor-quality drugs he felt had been sold to him.

In addition to those convictions, in 2007, Samuels was convicted of possession of one gram of cocaine.  Lastly, in 2000, Samuels was convicted of accessory after the fact to manslaughter and criminal conspiracy.  This resulted from an incident where Samuels and two others committed a robbery, and after the robbery, one of the accomplices shot and killed the other.  Samuels helped dispose of the body afterwards.

12

As to the history and characteristics of the defendant, the PSR undeniably reflects a troubled criminal history.  The Court will not minimize this fact, but it does note that the most egregious conviction occurred twenty years ago.  Samuels himself admits that he was a danger to the community:  "The Petitioner does not deny or minimize those times of youthful criminal actions because, at that time, he was a danger [sic] to the community and himself.  But the Petitioner is asking this Honorable Court to take into consideration who he is now . . . and not who he was."  Record Document 91, p. 2.

Samuels's conduct in prison is illustrative of his rehabilitative efforts and demonstrative of his desire to spend his time productively.  He has had no disciplinary infractions during his entire incarceration.  Record Documents 86-1, p. 5; 86-2, p. 4; and 91, p. 3.  Further, he has earned his GED, as well as obtained HVAC and CDL licenses.  Record Document 86-1, p. 6.  He is currently obtaining a graphic design certification.  Id. at pp. 5-6.  Samuels submits that he has maintained employment within the BOP and has received regular pay increases.  Record Document 90, p. 2.  He has worked as a cook, done vegetable preparation, and worked as an HVAC technician.  Record Document 86-2, p. 5.

The Court now addresses the danger Samuels would present to the community if released.  A significant fact in the instant case is that Samuels is scheduled to be released to a halfway house on March 8, 2021.  Record Document 86-1, p. 2.  That is less than three months from now.  Moreover, aside from being released to the halfway house, Samuels's projected release date from BOP is September 2, 2021.  The Court finds BOP's intention to release Samuels to a halfway house in a few short months, and its intention

to release him from custody in less than one year, to be powerful indicators of Samuels's readiness to be reintroduced to society.

Furthermore, the Court is persuaded by the BOP's own risk assessment of Samuels. His recidivism risk was assessed in the spring of 2020 and he was calculated as a low risk offender.  Record Documents 82-1, p. 4 and 86-1, p.7.

Aside from the criminal history set forth above, the Government has presented no additional facts or grounds that would suggest Samuels poses a danger to the community. Indeed, all the Government argues is that Samuels's "criminal history . . . suggests he is a danger to the community, that his criminal conduct has not been deterred by prior periods of imprisonment, and that he would not comply with conditions of supervision." Record Document 89, p. 11.  This conclusory statement is unpersuasive in light of the facts of this case, Samuels's record in prison, and his approaching release date.  The Court finds that the danger Samuels presents to the community is minimal and concludes that overall, the § 3142(g) factors favor his release.

The Court must next consider the 18 U.S.C. § 3553(a) factors, including (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective

14

manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. 18 U.S.C. § 3553(a). In the context of compassionate release motions, other courts are also considering the risk of recidivism the defendant poses, the time remaining on his sentence, the quality of his release plan, and the impact of the BOP's efforts to maintain the safety of inmates. Many of these factors have already been considered by the Court and need not be repeated here.

Samuels entered federal custody on April 29, 2014. He has served approximately eighty months—nearly eighty percent—of his sentence. With good time credits, the BOP's projected release date is less than ten months from now. The significant time he has already served in prison has achieved much of the original sentence's purpose in terms of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, and providing a deterrent effect. A reduction in Samuels's sentence will not override the punishment he has already been subjected to, nor will it eradicate the effects of Judge Walter's original sentence.

By reducing Samuels's sentence, the Court does not condone or minimize the seriousness of his conduct. However, based upon the unique facts of this case, a sentence of time served would provide just punishment for his offense. Incarcerating him any longer likely serves no meaningful retributive purpose. This is especially so given that Samuels will be released by the BOP in less than one year, and to a halfway house in a few short months, regardless of any action taken by the Court.

15

The Court recognizes the possibility of sentencing disparities.  However, to the extent a disparity would be created, the Court must adhere to the independent nature of a review for compassionate release.  Hence, while the Court strives not to create unwarranted sentencing disparities, it is nonetheless obligated to independently evaluate each case presented to it for consideration.

Finally, the Court is concerned with Samuels's access to quality medical care while in BOP custody during the pandemic. Section 3553(a)(2)(d) instructs a court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(d).  As set forth above, Samuels's kidney disease has progressed from Stage 3 to Stage 4 over the past eight months.  FCI Texarkana has determined he requires a transfer to a medical facility to receive greater care.  However, Samuels has been waiting for months for a transfer that still has not occurred.  Samuels is in need of a sentence that will allow him an opportunity to obtain needed medical treatment.

In sum, Samuels has a significant criminal history, but he has exhibited commendable behavior while in prison, as reflected by the BOP records.  He has taken full advantage of the educational programming offered to him in the BOP, including obtaining his GED, his HVAC license, and his CDL.  He has been housed in a low security facility and does not have a disciplinary infraction on his record.  He presents a low risk of recidivism.  He is set to be released in a matter of months.  On balance, considering the Court's familiarity with all relevant facts of this case, the Court finds the § 3553(a)

16

factors support Samuels's request for compassionate release.  Samuels can be released to his mother's home, where he will undergo a fourteen-day quarantine.

## III.   Conclusion

For the foregoing reasons, Samuels's motion for compassionate release [Record Document 68] be and is hereby **GRANTED**.  Samuels's sentence is reduced to a sentence of **time-served** subject to the following conditions:

1.      Samuels's original term of supervised release of three years and all original conditions thereof [Record Document 56] are not affected by this ruling.

2.      Execution of the Court's order is **STAYED** until **December 24, 2020** to allow the Bureau of Prisons and the United States Probation Office the opportunity to make arrangements for Samuels's release.

3.      An amended judgment will be entered separately to reflect the amended sentence and to set forth all conditions of supervision that will apply to Samuels.

4.      The Clerk of Court shall provide a copy of this ruling to the Probation Office and FCI Texarkana.

**THUS DONE AND SIGNED** this 10th day of December, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE

17